IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                     Plaintiff,

Vs.                                                             No. 07-40153-01-SAC

MANUEL DE JESUS FIERROS-ALAVAREZ,

                     Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the defendant's motion to suppress evidence retrieved from a cellular telephone that had been seized from his car after his arrest at a Kansas Turnpike plaza. (Dk. 13). The defendant complains that almost twelve hours after his arrest officers searched the same cellular telephone and retrieved information from the telephone without first obtaining a search warrant. The government opposes the defendant's motion challenging the defendant's standing and advocating the automobile exception to a search warrant. (Dk. 17). At the hearing on the defendant's motion, the government presented the testimony of two Kansas Highway Patrol troopers, and counsel briefly argued their positions more fully stated in their memoranda. After

researching the issues, the court is ready to rule.

**FACTS**

On November 25, 2007, Master Trooper James Brockman with the Kansas Highway Patrol responded to a call around 10:00 p.m. from Plaza 127 on the Kansas turnpike that a driver lacked funds to pay the toll. Upon arriving, Trooper Brockman observed the defendant standing next to his car that was stopped in one of the turnpike lanes. Trooper Brockman instructed the defendant to move his car into the parking lot.

The trooper then asked for a driver's license, and the defendant responded that he did not have a license. The defendant said the car was owned by a friend, but he did have proof of insurance and a registration card. Trooper Brockman eventually arrested the defendant for not having a valid driver's license, for failure to pay the turnpike toll, and for having an expired temporary registration permit. During the arrest, the defendant was talking on his cellular telephone and encouraged the trooper to speak with the person on the telephone. Trooper Brockman took the telephone from the defendant and placed it into the defendant's car before handcuffing the defendant.

Trooper Clint Epperly performed an inventory search on the

vehicle, and evidence of a hidden compartment behind the rear passenger seat was detected immediately.  The troopers then used a drug-detection canine which aggressively alerted to the area of the suspected compartment.  The troopers then removed the vehicle to a garage facility where they exposed the compartment and found two packages of methamphetamine weighing approximately three pounds.  The drugs were packaged in a manner consistent with distribution or resale rather than personal use.  The troopers again searched the vehicle for evidence of drug trafficking and seized the cellular telephone believing that it was probably used to facilitate the distribution of drugs.

Sometime around 9:00 a.m. the next morning, Trooper Brockman met with Trooper Brent Hogelin, the designated Task Force Officer with the Drug Enforcement Administration.  Trooper Brockman described the arrest and presented the evidence, including the cellular telephone that had been taken.  Trooper Brockman identified the telephone as what is commonly called a "boost phone" or a single-use phone purchased for an allotted time.  Trooper Hogelin then interviewed the defendant who said that a third party had provided him with the car and the cellular telephone for the defendant's use.  At the hearing, Trooper Hogelin

testified that drug couriers commonly use cellular telephones to stay in contact with the suppliers, to deal with changes in plans, to learn the time and location for the delivery, or to communicate with the eventual recipient of the contraband.

Following the interview, Trooper Hogelin searched three parts of the cellular telephone. He looked at its "phone book" directory that stores names and telephone numbers, and he recorded the five names found there. He checked the recent calls directory that retains the telephone numbers of missed, received or dialed calls, and he wrote down the telephone numbers for the twenty recent calls. He checked the picture and video file but found nothing. He also recorded the number for the cellular telephone and noted that its service provider was Nextel Sprint Boost. After finishing this search, Trooper Hogelin returned the telephone to Trooper Brockman's custody.

**ARGUMENTS**

The defendant contends the search of the cellular telephone without a warrant was illegal and not authorized within the limited scope of any recognized exception. The search was too remote in time or place to be incidental to arrest, citing *United States v. Chadwick*, 433 U.S. 1 (1977).

There were no exigent circumstances to justify a warrantless search.  Once the car and telephone were seized and placed in government custody, there were no mobility concerns to justify the automobile exception.  A cellular telephone is distinguishable from the conspicuous drug contraband in *United States v. Johns*, 469 U.S. 478 (1985).   Finally, the retrieval of information violated the Electronic Communications Privacy Act (ECPA).

In opposing the motion, the government denies that the defendant had a reasonable expectation of privacy in the "phonebook" directory and "recent calls" directories of the cell phone.  The government characterizes the information found in those directories as analogous to what would be obtained with a pen register.  The government notes that the use of a pen register is not a search under Fourth Amendment jurisprudence.  Alternatively, the government argues the search of the cellular telephone was justified by the automobile exception.  Upon detecting a hidden compartment during the inventory search and receiving a positive alert from the drug-detection canine, the troopers had probable cause to search the car for drugs and evidence of drug trafficking which extends to a cellular telephone which is a recognized tool of the trade.  The search of the cellular telephone that next morning is consistent with the

5

Supreme Court's decision in *Johns*.  The government demonstrates the ECPA is inapplicable to the search here.

**STANDING**

The government challenges the defendant's standing even to contest the search of the cellular phone.  Relying on the general rule that physical possession alone does not establish standing, the government first contends the defendant has not asserted or claimed any cognizable possessory interest in the cellular telephone.  Besides this issue with the defendant's subjective expectation of privacy, the government questions whether the defendant had a reasonable expectation of privacy in the "phonebook directory" and the "recent calls" directory both of which comprise the information taken from the cellular phone.

"It is the defendant's burden to establish standing to challenge a fourth amendment violation." *United States v. Dewitt*, 946 F.2d 1497, 1499-1500 (10th Cir.1991), *cert. denied*, 502 U.S. 1118 (1992).  "A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated," and, in the context of a search, "the defendant must show that he had a subjective expectation of privacy in the premises searched and that

society is prepared to recognize that expectation as reasonable." *United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002).   He must prove a possessory interest or control of the cellular telephone that is lawful and legitimate.  *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003).   The issue is resolved by considering whether the defendant asserted an ownership interest over the seized item, whether the defendant has testified to an expectation of privacy, and whether the defendant has come forward with other evidence in proof of a lawful and legitimate interest in the item.  *Id.*

At the hearing, Trooper Hogelin testified that during the interview the defendant said a third party had given him the cellular telephone and the car for him to use.  The court is satisfied that the defendant has shown lawful possession and control of the cellular telephone at the time it was seized.  As a result, the defendant had a subjective expectation of privacy in it.

The other aspect of this standing issue is whether the defendant has an expectation of privacy in the actual information retrieved from this cellular telephone.  It is important to remember that the party asserting a Fourth Amendment violation has the burden proving a

legitimate expectation of privacy. *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir.), *cert. denied*, 539 U.S. 960 (2003). In *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court found no reasonable expectation of privacy in a dialed telephone number, because the telephone company must receive the number for the call to be completed and "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 742, 743-44. Unlike other surveillance methods, a pen register does not access the content of the communications. *Id.* at 741. For these reasons, the use of a pen register is not a Fourth Amendment search. *Id.* at 745-46. As this court noted in *United States v. Mercado-Nava*, 486 F. Supp. 2d 1271, 1276 (D. Kan. 2007), the rationale in *Smith* has been used for cellular telephones.[1] More recently, the Ninth Circuit in *United States v. Forrester*, 512 F.3d 500, 503, 509-511 (9th Cir. 2008), relied on *Smith* in holding that analogously there is no expectation of privacy in the to/from addresses of e-mail messages or the IP addresses of web sites visited, because a user should know this information was being

---

[1]In *United States v. Valdez*, 2008 WL 360548, at *3 n.3 (E.D. Wis. Feb. 8, 2008), the officer had searched only the address book and call history of the cellular telephone, and the court observed in a footnote: "I note that the Supreme Curt has held that there is no legitimate expectation of privacy in the phone numbers one dials. *See Smith v. Maryland*, 442 U.S. 735, 742, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979)."

voluntarily provided to the internet provider in order to route the flow of information.[2]

The government argues the holding in *Smith* and the later applications of *Smith* logically extend to the issue presented by the facts of this case so as to preclude an expectation of privacy in the recent call directory as well as the phonebook directory. The defendant's only rejoinder is that a phone book directory may disclose more information than that revealed in a pen register. The defendant, however, has not shown that the phone book directory in his cellular telephone discloses more than the "addressing information"--the telephone number and the subscriber's name--on the same numbers appearing in the recent calls directory.[3] *See*

---

[2] In holding that an individual has no Fourth Amendment privacy expectation in subscriber information given to the internet provider, the Tenth Circuit cited several decisions, including *Forrester*. *United States v. Perrine*, 518 F.3d 1196, 1204-05 (10th Cir. 2008).

[3] Trooper Hogelin testified he wrote down five names and numbers from the phonebook directory and recorded the numbers of the twenty recent calls. Trooper Hogelin was not asked to compare the numbers taken from the phonebook directory with the numbers in the recent calls directory. The defendant has not shown that the government retrieved information from the phonebook directory that was not retrievable from the recent calls directory. The court certainly can envision circumstances in which a phonebook directory would disclose more information than the recent calls directory. The defendant, however, has not carried his burden of proof in showing his cellular telephone is one of those instances. Without proof, the court will not permit speculation to fuel this issue.

*United States v. Forrester*, 512 F.3d at 509; *United States v. Perrine*, 518 F.3d at 1204. On the record as it stands, the court must conclude that the defendant has not carried his burden of proving a reasonable expectation of privacy in the addressing information retrieved from the recent calls directory and in the names and numbers taken from the phonebook directory. Thus, the court denies the defendant's motion for lack of standing. For the sake of argument, the court will assume the defendant has proved standing and address the automobile exception to a search warrant.

**AUTOMOBILE EXCEPTION**

"Under the automobile exception, 'police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.'" *United States v. Oliver*, 363 F.3d 1061, 1068 (10th Cir. 2004) (quoting *Florida v. Meyers*, 466 U.S. 380, 381 (1984) (per curiam)). This search may include "the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Courts have not imposed a strict temporal restriction on the execution of a search pursuant to this exception:

> Furthermore, "the justification to conduct such a warrantless search does not vanish once the car has been immobilized," *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam), and "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); *see Texas v. White*, 423 U.S. 67, 68, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) ("police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant"). Accordingly, a container in a vehicle may be searched without a warrant within a reasonable time after its removal from the vehicle. *See Johns*, 469 U.S. at 480, 105 S.Ct. 881 (approving "a warrantless search of packages several days after they were removed from vehicles that police officers had probable cause to believe contained contraband"); *United States v. Corral*, 970 F.2d 719, 726 (10th Cir.1992) (because police had probable cause to believe that package in automobile contained contraband, automobile exception permitted package's warrantless seizure and subsequent search at police station). Thus, if there was probable cause to believe Defendant's package contained contraband at the time it was seized from his vehicle, no warrant was necessary for the later search.

*United States v. Oliver*, 363 F.3d at 1068.

While conducting a lawful inventory search of the vehicle at the scene of the defendant's arrest, the troopers found evidence of a hidden compartment in the trunk. Trooper Epperly's drug detection canine alerted to the area. The canine alert gave the troopers' probable cause to search the vehicle for illegal drugs and evidence of drug trafficking. *United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005). In their search of the car, the officers found drugs in the hidden compartment. The officers then

seized the cellular telephone from the car believing it had been used to facilitate the distribution of drugs and would contain evidence of the same. "[C]ellular telephones are recognized tools of the drug-dealing trade." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 844 (10th Cir. 1999) (citing *See United States v. Slater*, 971 F.2d 626, 637 (10th Cir. 1992)). The troopers had probable cause to believe the cellular telephone contained evidence of the defendant's contact with others who might be involved in these drug trafficking activities.  Prior to searching the cellular telephone the next morning, the troopers spoke with the defendant who said that the cellular telephone had been given to him by the same third party who had provided him with the car.  Immediately after this interview, Trooper Hogelin retrieved the information from the cellular telephone.  This short delay in searching the cellular telephone does not disqualify the search as lawful pursuant to the automobile exception

       The defendant mistakenly argues this situation is similar to *United States v. Chadwick*, 433 U.S. 1 (1977), in which the court struck down a warrantless search conducted one and one-half hours after the defendants' arrest of a locked footlocker that had been placed in the trunk of a parked car just before the defendants' arrest and thereafter seized by

officers.  Abrogating the rule from *Chadwick* that distinguishes between containers and cars, the Supreme Court recognizes that the officers may conduct a warrantless search of a closed container found in an automobile when there is probable cause to believe contraband is contained in the automobile, regardless of whether the probable cause extended specifically to the particular container.  *California v. Acevedo*, 500 U.S. at 574-76, 579-80.  In 1999, the Supreme Court reiterated its holding in *United States v. Ross*, 456 U.S. 798 (1982):

> *Ross* summarized its holding as follows:  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *Id*., at 825, 102 S.Ct. 2157 (emphasis added). And our later cases describing *Ross* have characterized it as applying broadly to all containers within a car, without qualification as to ownership. *See, e.g., California v. Acevedo*, 500 U.S. 565, 572, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ("[T]his Court in *Ross* took the critical step of saying that closed containers in cars could be searched without a warrant because of their presence within the automobile"); *United States v. Johns*, 469 U.S. 478, 479-480, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (*Ross* "held that if police officers have probable cause to search a lawfully stopped vehicle, they may conduct a warrantless search of any containers found inside that may conceal the object of the search").

*Wyoming v. Houghton*, 526 U.S. 295, 301 (1999).

In *Wyoming*, an officer conducted a traffic stop and observed a syringe in the driver's shirt pocket.  When the driver eventually admitted to

using the syringe to take drugs, the officer had the passengers step out of the car in order to search the passenger compartment for contraband. The officer found on the back seat a purse which one of the back seat passengers claimed. The officer searched the purse finding drug paraphernalia and drugs. The Wyoming Supreme Court held the search of the purse was unconstitutional because it did not belong to the driver and the officer lacked probable cause to search the passengers' personal effects. 526 U.S. at 299. On certiorari, the United States Supreme Court explored the broad rationale behind the automobile exception and dispensed with any limitation based on ownership or with any requirement for individualized probable cause:

> *Ross* concluded from the historical evidence that the permissible scope of a warrantless car search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." 456 U.S., at 824, 102 S.Ct. 2157. The same principle is reflected in an earlier case involving the constitutionality of a search warrant directed at premises belonging to one who is not suspected of any crime: "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). . . .
>   In sum, neither *Ross* itself nor the historical evidence it relied upon admits of a distinction among packages or containers based on ownership. When there is probable cause to search for contraband in a car, it is reasonable for police officers-like customs officials in the

14

founding era-to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband in the car.

526 U.S. at 302. The Court then shut the door on distinguishing between belongings or containers in cars based on unique privacy interests:

> Even if the historical evidence, as described by *Ross*, were thought to be equivocal, we would find that the balancing of the relative interests weighs decidedly in favor of allowing searches of a passenger's belongings. Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which "trave[l] public thoroughfares," *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), "seldom serv[e] as ... the repository of personal effects," *ibid.*, are subjected to police stop and examination to enforce "pervasive" governmental controls "[a]s an everyday occurrence," *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny.
> . . . .
> Whereas the passenger's privacy expectations are, as we have described, considerably diminished, the governmental interests at stake are substantial. Effective law enforcement would be appreciably impaired without the ability to search a passenger's personal belongings when there is reason to believe contraband or evidence of criminal wrongdoing is hidden in the car. As in all car-search cases, the "ready mobility" of an automobile creates a risk that the evidence or contraband will be permanently lost while a warrant is obtained. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

526 U.S. at 303-04. In short, the transportation of personal belongings in an automobile substantially diminishes a person's privacy expectations.

Based on the cases and arguments raised to date, the courts generally have not been inclined to suspend general Fourth Amendment jurisprudence on exceptions to the search warrant simply because the container is a cellular telephone.  *See e.g. United States v. Finley*, 477 F.3d 250, 259-260 (5th Cir.), *cert. denied*, 127 S. Ct. 2065 (2007); *United States v. Mercado-Nava*, 486 F. Supp. 2d 1271, 1277-79 (D. Kan. 2007) (and cases cited therein);  *United States v. Deans*, 2008 WL 880195 at *4-*5 (D. Minn. 2008); *United States v. Urbina*, 2007 WL 4895782 at *11-*14 (E.D. Wis. 2007); *but see United States v. Park*, 2007 WL 1521573 (N.D. Cal. 2007).  The court finds no Fourth Amendment violations here.

**PRIVACY ACT VIOLATION**

In addition to the Fourth Amendment challenge, the defendant asserts that the retrieval of numbers from the cellular telephone violated the Electronic Communications Privacy Act ("ECPA").  Trooper Hogelin here did not intercept any electronic communications in violation of Title I of the ECPA.  *See United States v. Mercado-Nava*, 486 F. Supp. 2d at 1279.  The same warrant exception used in the Fourth Amendment analysis applies to Title II of the ECPA.  *Id*.  Even assuming an ECPA violation occurred here, suppression of evidence is not a remedy recognized for a

16

Title II violation of the ECPA.  See 18 U.S.C. §§ 2515, 2708; *United States v. Perrine*, 518 F.3d at 1202 (and cases cited therein).

IT IS THEREFORE ORDERED that defendant's motion to suppress evidence retrieved from a cellular telephone (Dk. 13) is denied.

Dated this 23rd day of April, 2008, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge